The ATCHISON, TOPEKA & SANTA FE RAILWAY CO. et al., Petitioners,

v.

INTERSTATE COMMERCE COMMISSION and the United States of America, Respondents.

No. 77–1946
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

Jan. 26, 1979.

---

* Rule 18, 5 Cir.; *see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.*, 5 Cir., 1970, 431 F.2d 409, Part I.

Raymond J. Salassi, Jr., New Orleans, La., Charles W. Burkett, John MacDonald Smith, San Francisco, Cal., for petitioners.

Griffin B. Bell, U. S. Atty. Gen., U. S. Dept. of Justice, Washington, D. C., Mark Evans, ICC, Gen. Counsel, Charles White, Jr., Associate, Kenneth G. Caplan, Carl D. Lawson, Asst. Chief, James F. Ponsoldt, Atty., App. Section, U. S. Dept. of Justice, Washington, D. C., for respondents.

J. William Vaudry, Jr., Moise W. Dennery, New Orleans, La., for Long Island Rail Road Co.

Richard H. Stokes, Jamaica, N. Y., Walter J. Myskowski, Barry Roberts, Washington D. C., for Sunkist Growers, Inc.

Before RONEY, GEE and FAY, Circuit Judges.

PER CURIAM:

This is a petition for review of an order of the Interstate Commerce Commission establishing rates for the shipment of citrus fruits by rail eastward from California and Arizona. Docket No. 35960, *Sunkist Growers, Inc. v. The Akron, Canton & Youngstown R.R. Co.*

In 1974, citrus growers in these two states filed a complaint with the ICC requesting a prescription of rates taking into account the use of modern refrigerator cars and scaled to provide lower rates as the quantity shipped per car increases. Finding that such rates would lead to better utilization of railroad stock without decreasing revenues, the administrative law judge entered an order directing publication of the rates sought. Although the railroads resisted the rates and filed a set of exceptions, all other than The Long Island Railroad reconsidered their position subsequent to the order and published the rates as ordered. The Long Island Railroad, however, refused to acquiesce in this rate structure.

The ICC affirmed the decision of the administrative law judge as to all the railroads except the Long Island. It ordered that the rates for the Long Island be adjusted so as to permit that line to collect a 12½% terminal surcharge. Rather than increase the cost to shippers, the ICC ordered that the surcharge should be effectuated by lowering the amount that the railroads could divide for their freight costs. In essence, as to revenues from shipments destined for points on the Long Island line, the ICC adopted the maximum of the old rate structure which was lower than that afforded by the new rates.

The particular problems of the primarily passenger Long Island Railroad and its needs for additional revenues to offset increased retirement taxes were recently before this Court in *Aberdeen & Rockfish R.R. v. United States,* 565 F.2d 327 (5th Cir. 1977). In that opinion, this Court set aside an ICC order granting Long Island a 12½% interim surcharge on all shipments originating or terminating on its line. The basis for the Court's action was the absence of a

reasoned explanation of the order. Although the Supreme Court took *certiorari* in *Aberdeen* and reversed insofar as the opinion required establishment of a trust fund, its opinion was confined only to that issue. *Long Island R.R. v. Aberdeen & Rockfish R.R.,* —— U.S. ——, —— n. 1, 99 S.Ct. 46 n. 1, 58 L.Ed.2d 1 (1978). Otherwise, the decision of this Court stands. *Aberdeen & Rockfish R.R. v. United States,* 586 F.2d 609 (5th Cir. 1978).

The instant order suffers from the same infirmity as did the order in *Aberdeen.* It lacks any reasoned basis. The reasoning of the administrative law judge adopted by the ICC did not include a discussion of the 12½% surcharge. Nor does the Commission itself offer any reason for the adoption of such a rate. Bound, therefore, by the decision of the *Aberdeen* panel, we remand to the ICC for further proceedings in conformity with the opinion in this case and *Aberdeen.* We leave it to the ICC to determine on remand whether this case should be consolidated with *Aberdeen* or heard before the same administrative law judge.

Apparently we need not concern ourselves with the continuance of the basis of rates established by the order during this remand. The petitioners have indicated in their reply brief that they would stipulate, in the event this case was remanded to the ICC, not to cancel the existing basis of rates to Long Island points for 90 days from the date of remand, or until the Commission acts in response to the remand, whichever shall first occur. The Commission will have jurisdiction after remand to handle any further problems in this connection.

REMANDED.